Michael Berry The point, the simple fact of what that weapon is, it's not, you don't want to... A Polish version. I don't know how big the clip is. I've only seen one. Well, he still has it. No, he has one. He's a collector. It's not a... No, he's just self-protection. He just went out and bought it one time when there was a threat that the government was going to ban him. But it's a Polish version of the thing. Well, he was collecting. He's not a drug dealer, that's my knowledge. He has never fired it? No. Yes, yes, yes. I'll tell you about it. Everybody in the room can hear it, I'm afraid, because the mic's on, but whatever. We're off the record. Well, I know, except we're on a hot mic. Okay, well, Mr. Hobson, we're ready for you and you're ready for us. Are you representing both of the Berries here? On the briefs? Okay, fine. Yes, sir. Thank you. Good morning. Please report. My name is Brian Hobson. I represent Michael Berry, who is the innocent spouse and interested party on appeal. Under the MVRA, as the court knows, for any levy proceeding or garnishment for criminal restitution, the government's required to step into the shoes of the defendant. The question here is may the government liquidate an innocent spouse's IRA in one half to satisfy the burden of the criminal defendant for criminal restitution. I think the central focus of the disagreement between myself and the government is the recognition or lack thereof that retirement accounts are different. They're not wages. They're not checking accounts. They're not classic property that we normally see that are run by state law. There's federal statutory framework surrounding retirement accounts starting in 1974 with ERISA when the IRAs were instituted and being amended and branching out to today where they set up ownership in these accounts. They set up protections and guidelines for trustees. The asset class that we're dealing with is IRAs, which are fully regulated by 26 U.S.C. 408. It is 408 that we're asking for an analysis under NOVAC and under BOGS to determine the vested rights of Gwen Berry in these accounts for purposes of criminal restitution. Now, NOVAC is a Ninth Circuit case that looked at ERISA accounts and whether they were subject to restitution. What the NOVAC court said is when you have an asset class that is fully regulated by federal law, that we look to federal law to determine the criminal defendant's rights in that account and in that asset. There's, I think, no doubt that Section 408 is the only statute that regulates IRAs. There's no competing state statute that attempts to regulate contribution limits, trustee guidelines, ownership, or any other aspect of IRAs during the life of the owner. Now, if a— Well, now wait. Descent and distribution of IRAs goes according to state law, does it not? Can you— In other words, if a parent or a spouse dies, the spouse or the children inherit the IRA and I'm assuming that's according to state law because then you get a special tax— You're correct, and I think a distinction does have to be made to IRA funds in an IRA with a trustee during the life of the owner and then what happens after a quadro is entered or death because those things are anticipated by Congress. They have rules for how a spouse can roll an IRA if they inherit it following the death of the owner. They also allow the state courts to divvy up that property if a quadro is entered at the state court level. There's nothing in 408 that anticipates some state law intervention in that property right during the life of the owner. Now, I think another important distinction here is any restriction on the criminal defendant to access the funds, talking about whether her rights vested, it's important to look at the law, the federal law and the plan, and that's what the NOVAC Court says. This isn't a restriction that was created by Michael Berry or Gwen Berry. They didn't set up a checking account only in Michael's name. It's not a man-made construction. It's actually Section 408 that ensures that Gwen Berry can never liquidate funds from that account without at least the spousal consent of Michael Berry. Now, the ownership in that account is dictated by federal law, not state, and the tax consequences are dictated by federal law to the owner. If Gwen Berry was to liquidate $1 million from this fund or if the garnishment order goes through, the owner is still liable for the taxes on that distribution. There is no way, and if we look at the record on appeal at 585, you'll see the garnishees answer. They struggle with how do we separate this property out for the garnishment order, and what they come up with is we'll make four separate accounts, all in Michael Berry's name, and then two of those accounts will be one half of the property, and we'll send that out for the garnishment order. What do you do with the Loftus case, which said in footnote 7, the district court also correctly held that the government could garnish Todd's one-half interest in any community property solely managed by Lisa, including her retirement savings account. Sure, and none of those deal with accounts that are fully regulated by federal law. It's a savings account, but I do not believe an IRA is at issue in Loftus, Madaris, or any of the cases cited by the government, and it is that statutory framework surrounding ERISA or IRA accounts that's the basis of the argument. I don't know the exact nature of the savings account, but the IRA is not mentioned. How many people have retirement savings accounts that are not federally regulated in this era? It cites, and then it cites 28 U.S.C. 3003b1, but that's collecting taxes, so that's sort of a tax thing. Sure, I don't know the answer to how many people aren't in federally regulated retirement accounts, but surely there's a difference between a savings account that is not regulated exclusively by federal law and something that falls under 408. The 408 restrictions— Is it your view that what you're—so you're trying to suggest that any Michael Berry IRA is Michael Berry's and not Gwendolyn's at all? That's correct, during his life.  You admit that this was community property, but it was subject to his sole management and control, right? No, I don't admit that. I think any community property claim, and that gets into the Boggs issue, is totally inconsistent with the framework. Well, but the whole point of Quadros is when people get divorced, the wife makes a claim on the husband's IRA and vice versa. That's correct, and I think if that— I mean, I would assume that was based on community property law. It would be, and that's anticipated in 408. And actually, the advice given to the trustee is to not assign, not transfer, unless a Quadro provision is put in. So again, I think there is a distinction between the IRA funds as they sit at Vanguard today and what would happen after a divorce or what would happen after the death of Michael Berry. What do you do also with the recent—how are we to interpret the affirmance of the appeal, criminal appeal of Gwendolyn, where it said the Berries appear to raise in a separate appeal the same challenges to the restitution order in this appeal, and then the court holds each claim fails. Is that the suppose of your case? I've read that opinion. I don't think that they directly attack the issues that I'm now presenting to the court. It's sort of an interesting observation anyway. Sure. I mean, there was some overlap, obviously, in those two cases. They are companion cases, but the issues that are being raised now were solely raised under this appellate number as they were split, and Gwen Berry is also on this appeal. Right. Now, something that the district court used as precedent incorrectly was a private letter ruling 199937055, which, as this court knows, has no presidential value, but if I'm allowed, I'd like to clarify what that really stands for and what they're saying in that private letter ruling. What happens, the taxpayer is asking for advice from a federal agency on whether they can do some sort of action, and what he asks is whether he can split his IRAs down the middle, give half to his wife, and a transfer. What the government says is, that's fine, you can do that, but you're going to have to pay taxes on the transfer. So what that stands for is you can't take an IRA in its current form and just transfer it over to a spouse. You would have to liquidate the amount you want to transfer, pay your taxes, and send post-IRA money over to the spouse. I think that's important because now we're talking about the sole ownership of the account and how much activity or role the spouse plays, which, as far as I can tell, is none. During the life of the owner, the spouse has no access, cannot access the funds, cannot distribute funds. And standing in her shoes, I think the government is so restricted. You'll notice in their brief that they oscillate between the shoes they wish to stand on. They will lay out why they can get to IRAs as a rule of law. We're not arguing that if Michael Berry was a defendant, they can't access the IRA funds. I think the law is pretty clear that if you have a lump sum distribution, that that's a vested right in that lump sum. What we're arguing is that, standing from her point of view, Section 408 and the terms of the plan in Vanguard are an obstacle to her power to liquidate, which is really the basis of the argument. Because then the government says, and then Michael Berry has the power to liquidate. They don't get to stand in his shoes. I mean, that's decades of precedent that require them to remain with Gwen Berry. Now, separate from the Novak issue is a preemption issue, a conflict preemption issue, that uses guidance from Boggs. Boggs looked at the preemption clause of ERISA but refused the invitation to use the preemption clause as the means for their ruling. They went with a classic conflict preemption analysis, which is courts aware as you find conflict between federal and state law. And if that is an obstacle to the purpose of congressional enactment of the statute, the state law cannot stand. There's some overlap in the conflicts, like no transfer, but I want to clarify the position. What I'm saying is a community property claim during the life of the owner is inconsistent with the framework. And let's, for example, I look for a case that would involve a spouse's ability to devise her one-half community property interest in the IRA during the life of the owner. And what would happen? If under Texas state law Gwen Berry died before this criminal action occurred and devised one-half community property interest in the IRA, the state law would distribute that one-half interest.  State law can't touch it. So what you have is the devisee of Gwen Berry receiving a million dollars out of his IRA, and then you have Michael Berry, who's going to pay $333,000 in taxes on that distribution. I think those details and when you really start cutting down to what Congress is trying to do by providing this tax-deferred vehicle, and it's for the sole benefit of the owner. If that devisee plan actually is executed, it's no longer a tax-deferred vehicle for the sole benefit of the owner. He's the only one who's at detriment. He's the one who loses $333,000 for a devise that he had nothing to do with and no control over. Another part of the preemption argument is the impact of 408G. Now 408G says this section shall disregard any community property laws. It is not under a subsection. It is not linked or tied to any individual part of 408. It stands alone. And I think the only way to read that is that during the life of the owner, community property shall not be applied to IRAs. That language has been interpreted by this court and by the Ninth Circuit. In Ordlock, the language was with any determination you shall disregard community property laws. Now that's under the innocent spouse statute, and that's narrowly tailored for determination of whether the spouse is innocent or not. In Allen v. Commissioner, out of this court, under the joint accounts federal framework, it says shall disregard community property laws unless income is from real property. And what this court said was that's clearly relating to a tax deficiency analysis because it has the language from real property present. So we haven't really seen language like this interpreted that's so sweeping, that's not set in its own section, that Congress is saying to disregard all community property laws unless, in my opinion, one of the anticipated triggers happens, like a quadro, like death. So the conflict between a community property claim and the federal framework of 408 I think is apparent, but the question is, is that an obstacle to the goals that are set out by Congress? And I think one of the major goals that you'll see is the goal to incentivize savings. There was a drawback where we were behind our competitors with the amount that was being saved for retirement in the U.S., and this is a tax-deferred vehicle to help that. I think instituting community property claims that give rights that aren't envisioned by the statute cuts against that goal. And I also think the ultimate goal of providing a tax-deferred vehicle for the sole benefit of the owner is cut if every community property claim leads to one thing, and that's the detriment of the owner and a huge tax bill. Well, let me just ask you again about the Loftus case, because my understanding is that in the district court decision it was very plain that there was a garnishment of an IRA, as is the case here. Loftus is the one where I quoted to you where it said garnishment of the non-spouses of a half interest in the other one's account. And I don't know if the issues raised were identical to the issues raised before this court now. Well, it's definitely the same kind of account, and then the Fifth Circuit said, consequently, the district court correctly held that the government could garnish Todd's one-half interest in any community property solely managed by Lisa, including her retirement savings account. Sure. And I think there's – a lot of the case law deals with the ability to touch IRAs at all, and that is Medaris Loftus, everything leading up to the arguments that if it's sole property or solely managed that they can't garnish at all. And that's what those cases are about. No one has laid out the IRA framework and asked the questions that I'm now presenting to the court. So in as far as they approved of garnishment of that IRA, it is not on point with the issues now raised. It's not on point with preemption or the Novak decision being applied to Section 408. Okay. Thank you. You have a rebuttal opportunity. Thank you, Your Honor. Okay. Ms. Lansdon. Good morning, Your Honors. It may please the Court. Karen Lansdon for the United States. Judge Jones, to touch on two points that you made. The first is in Barry's criminal appeal, the Court did, in fact, as you quoted, point out that Mrs. Barry in the second half of her brief in this case argued that the restitution order for the amount was incorrect. So I believe that the Court pointed out that the second half of her brief is moot because they found that the restitution order was proper. The only issue before the Court today is whether the District Court correctly ordered garnishment of Gwendolyn Barry's one-half interest in Michael Barry's solely managed community property to enforce her criminal restitution judgment. Now, the Barrys, until your questioning today, have refused to acknowledge this Court's precedent in Eloshi, Loftus, Decay, and controlling Texas state property law, which make it clear that the United States is entitled to garnish one-half of a non-debtor spouse's solely managed community property, including a non-debtor spouse's retirement accounts. And, Judge Jones, as to your question as to Loftus, it is not clear in the written opinion that it was an IRA because the wife in that case conceded that the defendant We went back to the District Court. Correct. And I would say that it's not in our record, but in perusing publicly available documents, if you go and look at the garnishee's answer in Loftus, it does actually list the account name, and the abbreviation of the account name has IRA in it, and that is what they garnished one-half of. So I do believe you are correct that this is not a case of first impression. The Loftus Court did, in fact, already allow a one-half interest garnishment of a non-debtor spouse's IRA. And I think what's important here and that Mr. Barry is missing is that the framework we're operating under is the MVRA. That is what this garnishment was made pursuant to. The MVRA was enacted by Congress to ensure that the loss to crime victims is recognized, as well as guarantee that they receive restitution that they are due. The MVRA authorizes the government to seek enforcement of criminal orders of restitution using all remedies that are available for the collection of criminal fines. So then the MVRA then turns us to the Federal Debt Collection Procedures Act, the FDCPA. Section 3613 of the FDCPA directs the court to treat restitution orders made pursuant to the MVRA as liens in favor of the United States on all property and all rights to property of the person fined, as if the liability was for a tax assess under the Internal Revenue Code. Now, the most important part is that the FDCPA provides under Section 3613A that the United States may enforce a judgment imposing a fine in accordance with the practices for the enforcement of a civil judgment under federal law or state law. Notwithstanding any other federal law, a judgment imposing a fine may be enforced against all property or rights to property. And then it goes on to list exceptions. Those exceptions are under Section 6334A of the Internal Revenue Code, and those exceptions lay out specific Railroad Unemployment Insurance Act special pension payment plans for those in the armed services. And those are the only retirement funds that would be exempt from garnishment. Notably, 3613A does not provide any exception for a restitution debtor's community property interest in a spouse's retirement account. And this Court in Dekay, Eloshi, and Loftus, and I would point out the Novak Court that Mr. Berry so heavily relies upon, analyzed this notwithstanding clause. And all courts came to the same conclusion that the MVRA is what controls it, notwithstanding any other federal law. And so that's where we get into their analysis of ERISA and why ERISA plans are not protected for garnishment proceedings, because the MVRA has this notwithstanding clause. How does ERISA apply to IRAs? ERISA does not. I'm only saying that it's analogous to another form of a retirement plan. What happened in this case is Mr. Berry worked for ConocoPhillips for a very long time, and then he retired in 2006. He had to roll it over. Correct. So at that point, if we were talking in 2006, ERISA would have applied. But he rolled it over into an IRA, and that's where Mr. Berry goes to that 408 would now apply in federal law. But I would point the Court to the Dekay opinion, because the Dekay opinion analyzed Section 401 of the Internal Revenue Code, which is somewhat analogous to 408, and 401 is for pension plans. In the Dekay case, actually I think the represented party was the state pension plan. They came in as a party and objected to the garnishment. But the Dekay court analyzed 401 in the same, and I think it's analogous to Section 408, that the notwithstanding clause is sufficient to override any anti-alienation provision of retirement accounts. In Mr. and Mrs. Berry's brief, they do point to a specific document that they've submitted into the record, ROA 460, that they claim would make a partition to the community property law. I didn't hear Mr. Berry's counsel argue that before your court, but I would say that that is wholly inapplicable. There is no division of marital property in this case that would allow Mr. Berry's IRA to be separate property. And again, I think that that's what Mr. Berry's attorney misses in this case, is that we can't somehow take this IRA out of the community property scheme. What happens is the federal law creates a lien on the defendant's property, which is what the MVRA does, and then state law defines what property rights interest that lien attaches to. And so in Texas, there is only separate property and community property. We cannot exclude the IRA from existing in either one of those bundles, and I would offer to this Court that it's undisputed that that asset is community property. It's solely managed because it's property that Mr. Berry would have had if he were not married to Mrs. Berry, which is how we get to the solely managed property that he earned during the course of the marriage, and therefore it's community property solely subject to his sole management and control. That's correct, Your Honor. So within that framework, that is why we are able to garnish one half of it, because it is solely managed by Mr. Berry as opposed to jointly managed where we would have attempted to garnish 100% of it. Mr. Berry's brief also touches that if this Court does allow the United States to garnish the one half interest, that they ask that a 25% cap be put on that place pursuant to the CCPA. I would argue, and my brief points out and the record on appeal points out, that Mr. Berry does not receive periodic payments from these retirement accounts, as this Court in Decay previously analyzed where a 25% cap would be placed on pension plans payments. This is an account that Mr. Berry has unfettered access to. He somewhat uses it as a checking account. He withdraws any amount as he sees fit. So there is no periodic payment that a 25% cap would apply to. If we have your argument. Thank you, Your Honor. If there are no other questions, I will rest on my brief. That's fine. Thank you. Okay. Mr. Hobson. I'd like to address just a couple things gone over by the government, the first being the interest in the MVRA. And I'm aware that there is an interest to get restitution for victims of crime. And what we're proposing is a balance between getting that interest satisfied along with the protection envisioned by Congress for retirement accounts. Our position is not that the government can never access the funds in the IRA. It is that when they're distributed, they then leave the protections of 408 and one-half, which would then be community property solely determined by state law, would then be subject to garnishment by the government. But the IRA is not subject to 408, right? It is. Well, no, a pension plan is a pension plan under ERISA. 408 is ERISA, isn't it? No. Restitution 408 is actually 26 U.S.C. 408. Oh, excuse me. Yeah, when ERISA was enacted, IRAs were, in fact, enacted at the same time. But over time, it's been. I'm aware of that, but okay. It's now under Title 26. Okay. So I just wanted to clarify our position that restitution will be ordered, and they can obtain amounts from the IRA but not until distribution. Now, the government talks about the notwithstanding clause with the anti-alienation clause in ERISA, and that's been raised multiple times. It was also raised in NOVAC. And what the defense was arguing there is that the anti-alienation clause of ERISA bars any enactment under MVRA, any ability to access those funds ever. And the Ninth Circuit, as well as every court that's looked at it, has said that's not true, that MVRA will trump the anti-alienation clause. But that's the first part of NOVAC. Even in light of that understanding, the NOVAC court moves on to look at the import of federal law in determining property rights under the MVRA. And in 1940, the Supreme Court in Drive v. United States ruled that federal law is the ultimate control over property rights under a federal enforcement statute. Now, the facts of that case were they were trying to use an exemption under state law to hide money from enforcement in a tax levy proceeding. And they said, look, we'll use state property laws to delineate if you have any property interests at all, but then we come back to federal law to see if that's a property interest that we will recognize. And that's what I'm asking the court to do, is look at 408 and apply the NOVAC standard of does 408 prohibit her from having an absolute right to liquidation? Because if it does, our position as a government has no right to take one half and leave half a million dollars over the next three years in tax burden on Michael Berry. They should wait until after distribution. All right, and I'll just ask you once more. Suppose Loftus did in fact involve an IRA account, what would your position be? My position is that the issues raised now were not raised in Loftus or considered. Okay. All right. Thank you. Thank you.